[L. A. No. 1905. In Bank.—August 9, 1907.]

## F. G. HALL, Respondent, v. WILLIAM H. JAMESON, Appellant.

NOTE AND MORTGAGE—SINGLE TRANSACTION.—A mortgage executed cotemporaneously with a promissory note, to secure which it was given, forms part of the same transaction, and must be read in connection with the note, and the whole construed as one contract, in order to arrive at the true meaning of each.

TRUSTEE—PRINCIPAL AND AGENT—CONTRACT BINDING TRUSTEE PERSONALLY.—Where an agent makes a contract really on behalf of

his principal, but which purports to be his promise and to bind himself alone, and he has not in fact any authority to make that particular contract for his principal, the general rule is that the agent will be personally bound by the contract, notwithstanding his lack of personal interest in the consideration. He will be conclusively presumed to have intended to bind himself. This rule is particularly applicable where a trustee, in dealing with trust property, makes some personal promise to pay money in furtherance of the trust which he has no authority to make as trustee. In regard to such contracts, he is a principal, and must be presumed to have intended to act for himself alone.

ID. — POWER TO MORTGAGE — NOTE FOR BORROWED MONEY — PERSONAL LIABILITY OF TRUSTEE.—A trustee, having only the power to mortgage the trust property, who borrows money for the benefit of the trust, and executes a note therefor, signed by himself, with the added word "Trustee," containing the recital, "I promise to pay," etc., and to secure such note executes a mortgage on the trust property in the ordinary common-law form of a conveyance as security for the debt, containing personal covenants on his part to pay the indebtedness, and no stipulation relieving himself from personal liability, becomes personally liable by such contract, notwithstanding the mortgage, in that part of it operating as a conveyance, contained a reference to the fact that the mortgagor was conveying as trustee.

ID.—POWER TO MORTGAGE DOES NOT AUTHORIZE TRUSTEE TO BORROW SO AS TO BIND BENEFICIARIES.—Power conferred on a trustee to mortgage the trust property does not include the power to make a personal promise on behalf of the beneficiaries of the trust or the trustor that they, or either of them, should pay money borrowed by the trustee. It only carried power to pledge, convey, or hypothecate the property as security for money. There is nothing in section 2267 of the Civil Code, defining the authority of a trustee with respect to the trust property, contrary to this conclusion.

ID.—POWER OF SALE IN MORTGAGE—DEFAULT IN INTEREST—ACCELERATION OF DATE OF MATURITY—STATUTE OF LIMITATIONS.—A note which matured three years after its date was secured by a mortgage which provided that the sum borrowed should be paid at that time, with interest thereon, payable semi-annually. The mortgage also contained a provision that upon default in the performance of such conditions the holder of the note might sell the mortgaged premises at public auction, and out of the proceeds of the sale should "be entitled to retain all sums then secured by the deed (whether then or thereafter payable), including all costs," etc. Default having been made in the payment of interest before the date of the maturity of the note, the holder sold the premises under the power contained in the mortgage. *Held*, that the exercise of such power of sale did not have the effect to accelerate the time of maturity of any balance on the debt remaining unpaid after the proceeds of the sale were applied thereon; that the application of the proceeds was a

mere payment upon the debt, authorized to be made before its maturity; and that any unpaid balance did not mature until the date fixed by the note and mortgage for its maturity, and that until such time the statute of limitations did not commence to run against the balance.

APPEAL from a judgment of the Superior Court of Riverside County and from an order refusing a new trial. J. S. Noyes, Judge.

The facts are stated in the opinion of the court.

E. W. Freeman, for Appellant.

John G. North, for Respondent.

SHAW, J.—This is a suit upon a promissory note in the following words:—

"$2800.                                   BOSTON, June 8th, 1897.

"For value received, I promise to pay to Nathaniel U. Walker, trustee under the will of Francis Jackson, for the benefit of Harriet M. Palmer, or order, two thousand eight hundred dollars, in three years from this date with interest, to be paid semi-annually, at the rate of five per centum per annum, until this note is paid in full.

"WILLIAM H. JAMESON, Trustee."

This note was assigned to plaintiff before suit. Judgment was given for the plaintiff and the defendant's motion for a new trial was denied. The defendant appeals from the judgment and order.

1. It is first contended that the note is not binding upon the defendant personally, but only upon him in his capacity as trustee, and that therefore the personal judgment against him is erroneous.

Prior to the execution of the note, one William L. Joy had executed a deed conveying to the defendant, as trustee for certain stated purposes, a tract of land in Massachusetts. The deed empowered the defendant, as trustee, "to mortgage said property, or any part thereof, from time to time for such sums, to such persons or corporations [and] upon such terms as he may deem expedient," and gave directions as to the disposition of the money thus to be obtained. In

pursuance of this power the defendant borrowed of Walker, the payee of the note, the sum of twenty-eight hundred dollars, for which he executed the above note, and at the same time, to secure its payment, he executed to Walker a mortgage upon the Joy land. This mortgage, being part of the same transaction, must be read in connection with the note, and the whole construed as one contract in order to arrive at the true meaning of each. The mortgage was in the common-law form, purporting to convey the land to Walker as security for the debt. It began thus: "Know all men by these presents, that I, William H. Jameson, as I am trustee under a certain deed from William L. Joy, . . . by virtue of the power in said deed contained and every other power me hereto enabling, in consideration of two thousand eight hundred dollars . . . do hereby give, grant, bargain, sell and convey unto the said Nathaniel U. Walker," etc., the land particularly described. The condition was in part as follows: "Provided, nevertheless, that, if I, my heirs, executors, administrators, or assigns, shall pay unto the grantee, or assigns, the sum of two thousand eight hundred dollars in three years from the date hereof, with interest thereon [etc.] . . . then this deed, as also a note of even date herewith, signed by me, whereby for value received, I promise to pay the grantee or order the said principal sum and interest at the times aforesaid, shall be void." There followed a covenant in these words: "And I hereby, for myself and my heirs and assigns, covenant with the holder or holders hereof to perform and observe each and all of the terms of the foregoing condition." In explanation of the meaning of the contract as affecting the personal liability of Jameson, evidence was introduced to show that he obtained no personal benefit from the transaction and that he was acting throughout solely in the interest of the trustor and the beneficiaries. There was also testimony of a contemporaneous understanding that Jameson was not to be held personally liable, but as this was contradicted by other testimony, and the finding is in favor of the plaintiff, we must disregard that testimony, even if we considered it competent.

This contract by its terms purports to make the defendant personally liable thereon, and neither the context nor the circumstances proven are sufficient to change its effect in

CLI Cal.—39

that particular. It has been held that where a promissory note reading "we promise to pay," etc., is signed by the president of a company subscribing his own name, with the addition of the words "Prest. Pac. Peat Coal Co.," and by the secretary of the company, with the addition of the words "Sec. *pro tem.*," it is the note of the company, and not the personal obligation of the president and secretary. (*Farmers and M. Bank* v. *Colby,* 64 Cal. 352, [28 Pac. 118].) On the other hand, a note reading "we promise to pay," etc., and signed "D. Hassett, President," was held to be the personal liability of D. Hassett. (*Hobson* v. *Hassett,* 76 Cal. 203, [9 Am. St. Rep. 193, 18 Pac. 320].) The court in the latter case said: "There is nothing on the face of the note to show that there was any principal back of the defendant. He signed his own name, and wholly failed to indicate, if he had a principal, who or what the principal was. The word 'President,' which he added to his name, must be regarded as a mere *descriptio personæ.*" These cases perhaps sufficiently illustrate the rule applicable to contracts thus signed where the maker claims exemption from personal liability on the ground that he is an agent. If the facts in this case brought it within the rule applied in *Farmers and M. Bank* v. *Colby,* 64 Cal. 352, [28 Pac. 118], the defendant would be exonerated. But it is not a similar case. In the Colby case there was no question but that the president and secretary had power to bind the company by contract, and to that extent at least it is different from the case at bar. In the Hassett case the decision went upon the ground that the contract of Hassett did not purport to bind any one but himself, and that, although he did not so intend, and was in fact acting for his principal, the contract could not be varied by parol evidence. This case is governed by the latter rule. The contract made by Jameson consists of two distinct and separate parts—the mortgage on the land, and the promise and covenant to pay the money, which latter purported to bind the trustee personally. The trust-deed of Joy to Jameson gave the latter power only to mortgage the trust property. It gave no power whatever to make any promise or covenants to pay any money on behalf of Joy or on behalf of the beneficiaries. With respect to the mortgage, Jameson was acting solely as trustee, and could

not act otherwise, for he had no personal interest in, or power over, the land. With respect to the note and covenant, he was acting solely in his own behalf, for he had no authority thus to contract, except for himself. Where an agent makes a contract really on behalf of his principal, but which purports to be his promise and to bind himself alone, and he has not in fact any authority to make that particular contract for his principal, the general rule is that the agent will be personally bound by the contract, notwithstanding his lack of personal interest in the consideration. He will be conclusively presumed to have intended to bind himself. This rule is particularly applicable where a trustee, in dealing with trust property, makes some personal promise to pay money in furtherance of the trust which he has no authority to make as trustee. In regard to such contracts he is a principal, and must be presumed to have intended to act for himself alone. The rule is thus stated by the supreme court of the United States in *Taylor* v. *Mayo,* 110 U. S. 330, [4 Sup. Ct. 147] : "When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal. The trust estate cannot promise; the contract is, therefore, the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by contracts he makes as trustee even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him. . . . If a trustee, contracting for the benefit of a trust, wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, and that the other party is to look solely to the trust estate." There is nothing in the note or mortgage of Jameson that can be construed as a stipulation relieving him from personal liability or requiring the lender to look to the mortgaged property alone as security. The reference in that part of the instrument operating as a conveyance, to the fact that Jameson was conveying as trustee, was properly inserted therein for the purpose of designating the source of the power by which he was assuming to hypothecate the trust property. It only indicates the character in which he acted and the power which he possessed in relation to the part of

the contract which constituted the mortgage, and it does not purport to qualify the direct covenant to pay contained in that instrument, nor the express promise contained in the note. The power to ''mortgage'' the property did not include power to make a personal promise on behalf of the beneficiaries or the trustor that they, or either of them, should pay the money. It carried power only to pledge, convey, or hypothecate the property as security for money. (Civ. Code, sec. 2920.) The defendant's promise to pay the money was not necessary to the execution of the power, and it must be considered as his own personal obligation, whereby he became surety for the payment of the money.

There is nothing in section 2267 of the Civil Code contrary to this conclusion. It is as follows: ''A trustee is a general agent for the trust property. His authority is such as is conferred upon him by the declaration of trust and by this chapter, and none other. His acts, within the scope of his authority, bind the trust property to the same extent as the acts of an agent bind his principal.'' This refers to the trust property alone. His acts respecting that property, if authorized by the terms of the trust, bind the property. He is to that extent an agent for the property and for the interested parties. Consequently, the mortgage of the trust estate in this case was valid; but nothing in this section, nor in the deed of trust, gave him an authority to bind the trustor or beneficiaries personally.

We are therefore of the opinion that the personal judgment against Jameson is supported by the evidence.

2. It is further claimed that the action is barred by the statute of limitations. The note and mortgage were executed in the state of Massachusetts, and, therefore, under subdivision 1. of section 339 of the Code of Civil Procedure, the action would be barred two years after the cause of action accrued. The action was begun on January 3, 1902. By the terms of the note it did not become due until June 8, 1900, which was less than two years before the action was begun. The mortgage provided that the sum borrowed should be paid in three years from its date, ''with interest thereon, at the rate of five per centum per annum, payable semi-annually.'' It also contained the following provision: ''But upon the default in the performance of any part of the fore-

going conditions, the holder or holders hereof may sell the granted premises . . . at public auction; such sale to be on or near the granted premises, or at the real estate exchange and auction board in the city of Boston, without notice or demand, except giving notice of the time and place of sale once in each of three successive weeks in any one newspaper published in said Newton, and may convey the same by proper deed or deeds to the purchaser. . . . And out of the proceeds of such sale or sales the holder or holders hereof shall be entitled to retain all sums then secured by this deed (whether then or thereafter payable), including all costs,'' etc.   Default was made in the payment of the interest due on December 8, 1898, and again on June 8, 1899.   Thereupon on June 14, 1899, under the power aforesaid, the mortgagee sold the premises for the sum of two thousand dollars.   This left a balance of $1,221.68 remaining unpaid on the principal and interest on the note.

The argument is that, under the terms of the power of sale above set forth, it was necessary for the mortgagee to declare the principal and interest on the note and mortgage immediately due and payable, as a condition precedent to, or concurrent with, the exercise of the power of sale; that this election transformed the debt into a matured obligation, on which an action might have been maintained on June 14, 1899; that the statute of limitations began to run at that date, and hence that the action was barred two years thereafter.   In support of this claim the defendant cites *Brickell* v. *Batchelder,* 62 Cal. 624; *Maddux* v. *Wyman,* 92 Cal. 674, [28 Pac. 838]; and *Phelps* v. *Mayers,* 126 Cal. 549, [58 Pac. 1048].   In none of these cases was there any question concerning the effect which the exercise of such a power of sale as the one here involved would have in accelerating the time of maturity of any balance on the debt remaining unpaid after the proceeds of the sale were applied thereon. The question in each case was concerning the right to foreclose for the entire debt, where the mortgage authorized a foreclosure suit upon a default in some minor condition, before the maturity of the entire debt.   The cases are therefore not strictly in point, even if the instruments were alike. But they are not identical.   There is a difference in the terms which is important and material.   The case of *Brickell*

v. *Batchelder,* 62 Cal. 624, is as strongly in favor of the defendant as any of the cases cited, and a comparison of the mortgage there construed with that here involved will serve to distinguish them all. In that case the mortgage provided as follows: "But in case default shall be made in the payment of the said principal sum or the interest thereon, or any part thereof, . . . then said party of the second part, his heirs, executors, administrators, or assigns, are hereby empowered to proceed to sell the premises above described, with all the appurtenances, *in the manner prescribed by law.* And out of the money proceeding from such sale, the party of the second part shall retain the above amount of thirty-six thousand dollars," with interest and costs and two per cent for attorney's fees, which the instrument declared should become a debt to the mortgagee "upon filing the complaint in foreclosure." (The italics are ours.) The other cases are substantially the same in this respect. The provision in the mortgage here involved was that the mortgagee "may sell the granted premises at public auction," said sale to be "on the granted premises" or at the Boston real estate exchange, and "without notice or demand except" a three-weeks' notice in a newspaper. The reason for holding that the mortgage in *Brickell* v. *Batchelder,* 62 Cal. 624, required a declaration making the entire debt immediately due, was that the provision authorizing the sale of the premises "in the manner prescribed by law" could not be construed otherwise than as requiring a sale upon execution issued upon a decree of foreclosure in an action for that purpose. This was said to be obvious from the fact that there was no other manner "prescribed by law" that could be applicable to such a case. And as this made a foreclosure suit necessary to the exercise of the supposed power, it necessarily, in the opinion of the court, implied that the mortgagee was given power to declare the entire debt fully matured, notwithstanding that, by the terms of the mortgage, the principal was not yet payable. It was assumed, although not stated, that an action of foreclosure could not be maintained, unless the entire debt was declared due. In the present case the terms of the mortgage imposed no such necessary implication and presented no such difficulty. The sale was not to be made by the sheriff as upon an execution sale, but at public auction on the premises, and by

the mortgagee upon a notice specially prescribed in the power. No suit for foreclosure was required. The mortgagee could execute the power without judicial authority. It provided that the mortgagee should retain out of the proceeds of sale a sum sufficient to pay the note and interest. This implied that when the sale was made a part of the principal and interest on the debt equal to the proceeds which might be applicable thereto should thereupon be *payable.* But to say that a sum is *payable* is not the same as to say that it is *due.* A note made payable ''on or before'' a fixed date is payable at any time after it is executed; but it does not become due until the date fixed. In the mortgage under consideration there is not a word to the effect that the debt shall become due upon the sale, nor to the effect that the mortgagee, as a condition to the exercise of the power, must declare that it is due. The express language of the instrument is that it shall not become due until three years after its date. To interpolate a provision that it shall all become due upon a sale under the power, or that by such sale a greater part of the principal shall be immediately payable than the proceeds of the sale will pay, would be to put in the contract that to which the parties did not agree, and that which would contradict the express terms to which they did agree. By the contract, the payer of the note was to have the full term of the note within which to pay any deficiency remaining thereon, after the application of the proceeds of the sale. The mortgagee was given no power to deprive the payer of this advantage by any declaration he could make at the time of the sale. The effect of the sale and of the application of the proceeds was a mere payment upon the debt, a payment authorized to be made before its maturity, and of no more force in accelerating the maturity of the debt than any other payments authorized to be made upon a debt before it becomes actually due. It disposed of the mortgaged property in execution of the mortgage, and practically extinguished that part of the contract, leaving remaining the covenant to perform and the promise contained in the note, which remained in force to the extent of the balance remaining unpaid. These were separate obligations, and the suit is upon the note. No action could have been maintained for the balance due thereon until the expiration of three years from its date.

It follows that the action was not barred by the statute of limitations.

The judgment and order are affirmed.

McFarland, J., Sloss, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.