[No. B023975. Second Dist., Div. Three. Oct. 23, 1987.]

SEBASTIAN INTERNATIONAL, INC., Plaintiff and Respondent, v. KENNETH E. PECK, Defendant and Appellant.

**COUNSEL**

James R. Tweedy for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Don T. Hibner, Jr., and Natalie Naftzger Davis for Plaintiff and Respondent.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

Defendant Kenneth E. Peck (Peck or appellant) appeals from the judgment entered after the granting of a summary judgment motion in favor of plaintiff Sebastian International, Inc. (Sebastian). Peck was found to be personally liable on a lease guaranty. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 1978, Sebastian entered into a five-year lease for a building in Chatsworth. In September 1980, with the consent of the master lessors, Sebastian sublet the premises to West Valley Blanchard Grinding, Inc. (West Valley). In conjunction with the execution of the sublease, the corpo-

rate officers of West Valley, Donald and Patricia Farley and appellant Peck, each signed a guaranty of lease personally assuring payment of West Valley's rental obligations. The terms of the guaranty referred to Peck in his individual capacity; however, on the signature line he was identified as "Kenneth Peck, Vice President." Peck also provided Sebastian with a personal statement of his assets.

The sublease was for a 33-month period ending May 31, 1983. West Valley occupied the premises until approximately May 1981, when it went out of business, leaving 24 months remaining on the sublease for which it paid no rent. After unsuccessful efforts to secure another sublessee, Sebastian surrendered the leasehold back to the master lessors in April 1982.

Sebastian brought suit against Peck[1] to recover the unpaid rent as well as other losses it incurred in surrendering the lease. Peck asserted as one affirmative defense that he had executed the guaranty only on behalf of the corporate sublessee. He also contended that Sebastian had failed to mitigate damages by attempting to re-sublet the premises. After conducting discovery, Sebastian moved for summary judgment. Peck's only evidentiary opposition was his own declaration.

The trial court granted the motion, finding that Peck had failed to raise a triable issue as to any facts submitted by Sebastian. The court made a further finding that Sebastian's evidence established the submitted facts, which in turn established Peck's liability.

## ISSUES PRESENTED

The following issues are raised by this appeal:

(1) Whether as a matter of law appellant is personally liable on the guaranty of lease; and

(2) whether Sebastian discharged its duty to mitigate damages after West Valley's breach.

## DISCUSSION

### I. *Standard of Review*

■■■ The functions of both the trial court and the reviewing court on a motion for summary judgment are well established. "The matter to be

---

[1] West Valley and Donald and Patricia Farley were originally joined as party defendants. The Farleys were discharged from all debts in bankruptcy proceedings and were eventually dismissed from the complaint. A default judgment was entered against West Valley in July 1982; and it was subsequently suspended from corporate activities by the Franchise Tax Board in November 1982. None of these parties was involved in the summary judgment motion at issue in this appeal.

determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. . . . [Citations.]" (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

■ "[I]n reviewing the propriety of a summary judgment, [the appellate] court must resolve all doubts in favor of the party opposing the judgment. [Citation.] As a consequence, the declarations of the moving party must be strictly construed, while those of the opponent are liberally construed. [Citations.] However, the opposing party 'cannot rely on his pleadings, but must make an independent showing that he has "sufficient proof of the matters alleged to raise an issuable question of fact"' if the moving party's evidence, standing alone, is sufficient to entitle him or her to judgment. [Citation.] Summary judgment is proper if the evidence in support of the moving party would be sufficient to sustain a judgment in his favor and the opposing party has not presented any facts which give rise to a triable issue of material fact. [Citations.]" (*Kallen v. Delug* (1984) 157 Cal.App.3d 940, 948 [203 Cal.Rptr. 879].)

## II. *Peck's Liability on the Guaranty*

■ Appellant Peck contends the trial court erroneously granted summary judgment in that a triable issue remains as to the nature of his liability. Because the signature line of the guaranty designated him as "Vice President" and he subsequently states he was signing the document in his representative capacity, the ambiguity as to the intentions of the parties must be resolved at trial. We find that as a matter of law the guaranty was personally binding on Peck, and thus summary judgment was proper.

No California court has directly addressed the issue raised in this case. However, courts of several other jurisdictions have dealt with similar facts and consistently resolved the question adversely to Peck. (See *Ricker v. B–W Acceptance Corporation* (10th Cir. 1965) 349 F.2d 892; *Shipp v. First Ala. Bank of Gadsden, N.A.* (Ala. 1985) 473 So.2d 1014; *Klutts Resort Rlty.*

v. *Down 'Round Development* (1977) 268 S.C. 80 [232 S.E.2d 20]; *American Petrofina Company of Texas* v. Bryan (Tex.Civ.App. 1975) 519 S.W.2d 484.)

In each of the cases cited, the defendant had signed a guaranty personally binding him to certain obligations principally assumed by a corporation. Each defendant later attempted to avoid his obligation by claiming that the designation "president," "vice president," or "secretary" relieved him of personal liability. The reviewing courts found that these titles served merely as identification and were without legal effect to insulate the defendants.

"A director, officer or other agent, signing a corporate contract containing a promise in the proper form for an individual, is not relieved from personal liability by the addition to his name of terms such as 'director,' 'president' or the like. These terms are regarded merely as *descriptio personae,* that is, a term descriptive of the person rather than the relationship in which he signs the agreement. [Citation.]" (*Klutts Resort Rlty.* v. *Down 'Round Development, supra,* 232 S.E.2d at p. 24; *American Petrofina Company of Texas* v. *Bryan, supra,* 519 S.W.2d at p. 487.)

" '. . . Where a writing in the nature of a contract is signed by a person, and contains apt words to bind him personally, the fact that to such signature is added such words as "trustee," "agent," "treasurer," "president," and the like does not change the character of the person so signing, but is considered as merely descriptive of him. . . . The mere fact that a person sustains an agency relation to another does not prevent him from becoming personally liable on a contract with a third person, and, if it appears from the contract that he pledged his own credit or bound himself personally, the addition of such words as "president" and the like will be considered as mere descriptio personae. . . .' " (*Ricker* v. *B-W Acceptance Corporation, supra,* 349 F.2d at p. 894, quoting *Ellis* v. *Stone* (1916) 21 N.M. 730 [158 P. 480].)

We find the rationale of these decisions persuasive under the virtually identical facts of this case. Moreover, the principle of *descriptio personae* is well recognized in California law. In *Hobson* v. *Hassett* (1888) 76 Cal. 203 [18 P. 320], the defendant signed a promissory note "A. Hassett, President." When the note became due, he claimed he had signed only in his capacity as president of the corporation to which the amount of the note had been paid.

The California Supreme Court rejected this argument since the note did not reflect that the defendant was acting on behalf of the corporation or in other than an individual capacity. "There is nothing on the face of the note to show that there was any principal back of the defendant. He signed his

own name, and wholly failed to indicate, if he had a principal, who or what the principal was. The word 'president,' which he added to his name, must, therefore, be regarded as a mere *descriptio personae*." (*Id.,* at p. 207; see also *Estate of Shaw* (1926) 198 Cal. 352, 364-365 [246 P. 48]; *Hall* v. *Jameson* (1907) 151 Cal. 606, 610-612 [91 P. 518]; *Jones* v. *Post* (1856) 6 Cal. 102, 104; *Sayre* v. *Nichols* (1855) 5 Cal. 487, 488.)

The facts of the instant case fall squarely within the analysis of the foregoing cases. Apart from the signature line, the guaranty of lease contains no reference to Peck's relationship to West Valley as a corporate officer or to his signing the guaranty pursuant to such relationship.[2] On the contrary, the guaranty refers only to "Kenneth Peck" as a "guarantor" and specifies that he "jointly, severally, unconditionally and irrevocably guarantee[s] [West Valley's rental obligations]."

By its terms, the contract expressly describes a personal obligation and thus raises no question as to Peck's individual liability. The words "Vice President" added to the signature line are merely descriptive and as a matter of law under the principle of *descriptio personae* do not alter his obligation. Moreover, the guaranty would be rendered a nullity if Peck had signed only in his corporate capacity since the corporation was already bound under the terms of the sublease.[3] (*American Petrofina Company of Texas* v. *Bryan, supra,* 519 S.W.2d at p. 487; see also *Hall* v. *Jameson, supra,* 151 Cal. at pp. 610-611.)

Appellant's authorities do not address the foregoing analysis but simply stand for the general proposition that contractual ambiguities may be resolved by parol evidence. However, the language of the guaranty raises no ambiguity; as a matter of law Peck is personally bound notwithstanding the reference to his corporate title. (*Burling* v. *Thompkins* (1888) 77 Cal. 257, 258 [19 P. 429]; *Aetna Life Ins. Co.* v. *Carter* (1969) 269 Cal.App.2d 28, 30 [74 Cal.Rptr. 667].) On motion for summary judgment, the trial court properly resolved this legal question against Peck. We find no error with its conclusion.

### III. *Mitigation of Damages*

 Peck contends that a triable issue of fact also remains as to whether Sebastian made reasonable efforts to mitigate its damages. In this regard, he

---

[2] The record also contains no evidence that Peck had the authority as vice president of West Valley to bind the corporation under the terms of the guaranty. (See *Campbell* v. *Hanford* (1924) 67 Cal.App. 155, 162 [227 P. 234]; see also *Shipp* v. *First Ala. Bank of Gadsden, N.A., supra,* 473 So.2d at p. 1018.) .

[3] The fact that Peck provided a statement of his personal financial assets in conjunction with signing the guaranty is further evidence of the intention of the parties.

misconceives both the nature of the duty to mitigate and his evidentiary burden in opposing a summary judgment motion on this question.

■ A lessor's obligation to limit damages on the breach of a lease arises under Civil Code section 1951.2, which in part provides for the recovery of damages to the extent that the unpaid rent exceeds "the amount of such rental loss *that the lessee proves* could have been reasonably avoided . . . ." (Italics added.) (See Civ. Code, § 1951.2, subds. (a)(2), (a)(3), (c)(1).)

The nature of this obligation was explained in considerably more detail in *Green* v. *Smith* (1968) 261 Cal.App.2d 392, 396-397 [67 Cal.Rptr. 796]: "A plaintiff cannot be compensated for damages which he could have avoided by reasonable effort or expenditures. [Citations.] The frequent statement of the principle in the terms of a 'duty' imposed on the injured party has been criticized on the theory that a breach of the 'duty' does not give rise to a correlative right of action. [Citations.] It is perhaps more accurate to say that the wrongdoer is not required to compensate the injured party for damages which are avoidable by reasonable effort on the latter's part. [Citations.] . . . [¶] The doctrine does not require the injured party to take measures which are unreasonable or impractical or which would involve expenditures disproportionate to the loss sought to be avoided or which may be beyond his financial means. [Citations.] . . . The fact that reasonable measures other than the one taken would have avoided damage is not, in and of itself, proof of the fact that the one taken, though unsuccessful, was unreasonable. [Citations.] . . . The standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas·of law. [Citations.] It is sufficient if he acts reasonably and with due diligence, in good faith. [Citations.]" (See also 2 Assem. J. (1970 Reg. Sess.) pp. 3040-3044.)

As the statutory language provides, however, the defendant bears the burden of establishing the amount of the loss that could have been reasonably avoided. (See also *Sanders Construction Co.* v. *San Joaquin First Fed. Sav. & Loan Assn.* (1982) 136 Cal.App.3d 387, 399 [186 Cal.Rptr. 218].) On a motion for summary judgment, such evidence should at least raise a factual question of whether the plaintiff made any effort whatsoever to mitigate or whether the effort made was reasonable under the circumstances.

■ In support of its summary judgment motion, Sebastian submitted the declarations of John Cusenza, Sebastian's president, and Howard M. Rubin, Sebastian's attorney at the time of the breach of the lease. Mr. Cusenza stated that on April 30, 1982, with one year remaining on the master lease, Sebastian surrendered its leasehold interest back to the master lessors thus absolving it and Peck of further rental obligations. According

to Mr. Rubin's declaration, between the time of West Valley's breach and Sebastian's surrender back, he made efforts on behalf of Sebastian to obtain a new subtenant or assignee for the remainder of the lease term. However, the master lessors were unwilling to consent to a further sublease.

Peck's only response in opposition was his own declaration in which he simply reiterated the chronology of events and restated the legal principle that Sebastian "had a duty to mitigate any damages from an alleged breach of the lease." In his answers to interrogatories, Peck did not dispute that Sebastian had been unable to obtain the cooperation of the master lessors for a subsequent sublease and referred to a letter he received from Mr. Rubin to that effect in March of 1982.

As we have previously noted, in a summary judgment motion "the opposing party 'cannot rely on his pleadings, but must make an independent showing that he has "sufficient proof of the matters alleged to raise an issuable question of fact"' if the moving party's evidence, standing alone, is sufficient to entitle him or her to judgment. [Citation.]" (*Kallen* v. *Delug, supra,* 157 Cal.App.3d at p. 948.) In this case plaintiff's declarations established its efforts to reasonably mitigate damages, which efforts were in part successful as a result of the surrender back and in part frustrated by the lack of cooperation from the master lessor. By contrast, Peck submitted no evidence whatsoever either to contradict plaintiff's evidence or to demonstrate that its efforts had not been reasonable under the circumstances. Since Peck's opposition raised no triable issue of fact, the granting of summary judgment on this issue was proper. (See, e.g., *Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 590-591 [177 Cal.Rptr. 268]; *Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885, 889 [144 Cal.Rptr. 624].)

### DISPOSITION

Judgment affirmed. Respondent is to recover costs on appeal.

Klein, P. J., and Margolis, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.