[No. D011796. Fourth Dist., Div. One. May 9, 1991.]

HOME FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff and Respondent, v.
RONALD J. RAMOS, Defendant and Appellant.

COUNSEL

Frank E. Noble for Defendant and Appellant.

Higgs, Fletcher & Mack, John Morris and Jeffrey R. Davis for Plaintiff and Respondent.

OPINION

WIENER, J.—Defendant Ronald J. Ramos appeals a judgment after the trial court directed a verdict in favor of plaintiff Home Federal Savings & Loan Association (Home Federal) regarding Ramos's liability on a personal loan guaranty. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Ramos was president of the Ramos/Jensen Company (R/J Co.), a California corporation. R/J Co. was the general partner of a limited partnership, the Peacock Ridge Company (Peacock), formed to complete the Peacock Ridge construction project. Between September 1983 and March 1985, plaintiff Home Federal loaned nearly $7.4 million to the Peacock partnership. Each of the four separate loans was personally guaranteed by Ramos.

By November 1986, financial difficulties on the project caused Peacock to default on the Home Federal loans. At that point, Peacock owed substantial sums in accrued interest and had other obligations in connection with the project. Home Federal accepted a "workout agreement" in which it forgave all but $100,000 of the interest and agreed to loan Peacock an additional $50,000. In return, Peacock promised to execute a promissory note for $150,000 secured by a personal guaranty signed by Ramos.

The workout agreement was negotiated on behalf of Peacock by Arthur Brooks, an R/J Co. employee. Thomas Lynn, a major loan officer for Home Federal, negotiated the agreement with Brooks and prepared three documents—the loan modification agreement, the promissory note and the

personal guaranty—which he delivered to Brooks for the purpose of obtaining Ramos's signature. ██ ██ ██ ██ Brooks returned all three signed documents to Lynn on December 18, 1986.[1]

The promissory note provided a signature line for "Ronald J. Ramos, President" of R/J Co. as general partner of Peacock. Ramos signed the document "R.J. Ramos, Pres." The personal guaranty included the following operative language:

"In consideration of the loan from the Association to Borrower, I, Ronald J. Ramos (Guarantor), absolutely and unconditionally guarantee and promise to pay to Association, or whomever Association orders me to pay, any and all indebtedness of Borrower to Association evidenced by, or in any way connected with the loan (including but not limited to additional advances or loans) or the note, and to perform all covenants and agreements of Borrower contained in the note or any security agreement between Borrower and Association." The signature line at the bottom of the document provided for the signature of "Ronald J. Ramos." Instead, Ramos signed it as he had signed the promissory note: "R.J. Ramos, Pres."

When Peacock defaulted on the new note and Home Federal brought suit to enforce the guaranty, Ramos defended on the ground that his signature as "Pres." indicated an intent to bind only R/J Co. and not himself personally on the guaranty. At the close of all the evidence, the trial court granted Home Federal's motion for a directed verdict, concluding it was bound by the court's decision in *Sebastian International, Inc.* v. *Peck* (1987) 195 Cal.App.3d 803 [240 Cal.Rptr. 911].

## DISCUSSION

We begin with a word about the procedural posture of the case. The trial court directed a verdict against Ramos, concluding there was no conflict in

---

[1] Ramos attempts to argue that the guaranty was signed after the promissory note and that an issue therefore remains as to whether the guaranty is supported by consideration. (See generally *Rancho Santa Fe Pharmacy, Inc.* v. *Seyfert* (1990) 219 Cal.App.3d 875, 878 [268 Cal.Rptr. 505].) The record does not support such an argument. While the note is dated November 18, 1986, it is a typewritten date which reveals when the note was prepared but not when it was signed. Ramos's signature on the note is undated. In contrast, Ramos's signature on the guaranty is dated December 17, 1986. Thomas Lynn testified that the note and guaranty were prepared by Home Federal and presented to Brooks for delivery to Ramos, and that both documents were returned to him with Ramos's signature on December 18, 1986. Brooks testified he gave the documents to Ramos for his signature and that he was present when they were signed. He did not recall in what order they were signed. Ramos himself testified he signed the note first but he did not say the documents were presented to him for signature at different times. These facts, in our view, give rise to no inference that the guaranty was not contemporaneous with the note.

the relevant foundational evidence and believing itself bound by an earlier Court of Appeal decision. (See generally *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) ██ Even in the absence of a controlling appellate decision, however, the court was correct in deciding that no jury question was presented. ██ As the Supreme Court explained in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839], "The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. . . . It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Id.* at p. 865; see also *Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891-892 [222 Cal.Rptr. 455].) ██ Here, because the parties presented little relevant and no conflicting extrinsic evidence (see *Pacific Gas & E. Co.* v. *G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]), the trial court properly refused to submit the interpretation of the written guaranty to the jury. (See *Medical Operations Management, supra*, 176 Cal.App.3d at p. 892, fn.4.) ██ Likewise, however, we as the reviewing court consider the evidence and interpret the guaranty de novo. (*Parsons, supra*, 62 Cal.2d at p. 866; *Medical Operations Management, supra*, 176 Cal.App.3d at p. 891.)

Thus our function is not to determine whether factual issues remain to be resolved but rather to decide whether the trial court's interpretation of the guaranty was correct. In this regard we must interpret the document consistent with the *expressed* intent of the parties under an *objective* standard. (*Mission Valley East, Inc.* v. *County of Kern* (1981) 120 Cal.App.3d 89, 97 [174 Cal.Rptr. 300].) Would a reasonable lender in Home Federal's position have understood Ramos's conduct as indicating that only R/J Co. was to be bound? ██ Applying this standard, we agree with the trial court that Ramos's addition of the abbreviation "Pres." after his signature did not change the legal effect of the document as Ramos's personal guaranty of Peacock's liability under the promissory note.

*Sebastian International, Inc.* v. *Peck, supra*, 195 Cal.App.3d 803, relied on by the trial court, supports the conclusion that a signatory's mere addition of a title following the signature on a document otherwise purporting to be a personal guaranty does not change its personal character. In *Sebastian*,

the defendant Peck was vice-president of West Valley Blanchard Grinding, Inc. Peck signed a personal guaranty of West Valley's obligations under a lease but added the notation "Vice-President" after his signature. In an action to enforce the guaranty, Peck contended that because he signed in his corporate capacity, the guaranty bound only the corporation. Rejecting this argument, the court referred to cases from several other jurisdictions for the proposition that titles and the like are generally terms " 'descriptive of the person rather than the relationship in which he signs the agreement.' " (*Id.* at p. 808, quoting *Klutts Resort Rlty.* v. *Down 'Round Development* (1977) 268 S.C. 80 [232 S.E.2d 20, 24].)

For the purposes of this case, we see no reason to articulate a blanket rule that a signatory's notation of his corporate capacity can never raise an issue as to the identity of the guarantor.[2] (Cf. *Farmers' & Mech. Bk.* v. *Colby* (1883) 64 Cal. 352, 353 [28 P. 118].) Here as in *Sebastian*, however, to interpret the document as a guaranty by the corporate principal is objectively unreasonable because the corporations were already liable without the guaranty. In *Sebastian*, West Valley was the primary lessee. Here, while R/J Co. was not the primary obligor on the note, it is well established that a general partner is personally liable for the debts of a limited partnership. (*Evans* v. *Galardi* (1976) 16 Cal.3d 300, 305 [128 Cal.Rptr. 25, 546 P.2d 313].) Under these circumstances, to interpret the guaranty as binding only the corporation would render it a nullity.[3]

---

[2] For instance, had R/J Co. been a limited partner in Peacock, a guaranty executed by the corporation would have provided Home Federal with additional security.

[3] In urging us to depart from *Sebastian*, Ramos cites two cases from other jurisdictions which we do not find persuasive. In *Simpson* v. *Heath & Co.* (Ky.App. 1979) 580 S.W.2d 505, which involved a lease guaranty, a majority of the court felt it was possible the lessor "was content to accept the contract without additional guaranty or that there was no meeting of the minds on the question of [the defendant's] individual liability." (*Id.* at p. 506.) The opinion did not discuss the objective theory of contract interpretation nor did it explain why the lessor would bother requiring that the guaranty be signed if it was willing to accept the contract without it. A dissenting judge agreed with the rationale we adopt. (*Id.* at p. 507.)

In *Puget Sound National Bank* v. *Selivanoff* (1973) 9 Wn.App. 676 [514 P.2d 175, 70 A.L.R.3d 1270] a husband and wife were officers and sole shareholders of a corporate debtor. The bank, negotiating with the husband, demanded a personal guaranty from both as a condition of the loan. When her husband asked for her signature on the guaranty, the wife refused because she did not want to risk her separate property assets. She finally agreed when her husband told her that if she signed the guaranty as secretary of the corporation, only the corporation would be bound. The court held that because the notation after the wife's signature placed it on notice that she did not intend to be personally bound, it could not enforce the guaranty against her. (*Id.* at p. 179.) We fail to see why such a rationale would not invalidate every guaranty where the signatory attaches a title to his signature.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Work, J., concurred.