523 So.2d 942 (1988)
AMERICAN BANK & TRUST COMPANY OF HOUMA
v.
WETLAND WORKOVER, INC., et al.
Nos. CA-7789 to CA-7794.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
Rehearings Denied May 11, 1988.
*943 Harry C. Stumpf, Stumpf, Dugas, LeBlanc, Papale & Ripp, Gretna, for appellant Mack H. Deloney.
George Pivach, II, Pivach, Cossich & Pivach, Belle Chasse, for appellee American Bank & Trust Co. of Houma.
Nel F. Vezina, Emile L. Hebert, III, Gretna, for defendants, Mack H. Deloney, and Jim Sturdivant-appellants.
Before GULOTTA, C.J., and BARRY, WARD, WILLIAMS and PLOTKIN, JJ.
WILLIAMS, Judge.
The question on appeal is whether continuing guarantees signed by Jim Sturdivant and Mack Deloney were signed in their individual capacities or as corporate representatives of Wetland Workover, Inc. (Wetland).
In March of 1975, Jim Sturdivant, Mack Deloney and C.B. Davenport, principals of Wetland Workover, Inc., approached American Bank for the purpose of making a loan. Wetland offered a workover rig as security for the loan. Financial statements were provided to the bank by Wetland, Deloney, Sturdivant and Davenport. A loan memorandum dated March 24, 1975 lists the names of the principals together with their net worth as represented by their financial statements. The loan memorandum and minutes from a March 25 loan committee meeting reflect that Wetland made a loan application in the amount of $250,000.00 which would be secured by a rig and drilling barge. The minutes further show that the loan would be secured by the personal endorsements of the principals of Wetland. The loan was approved on the basis of receiving a favorable report on the equipment and operations of Wetland by a Mr. Cook.
At the bank's loan committee meeting on April 3, 1975, Mr. Lathrop requested that the loan committee approve a loan in the sum of $56,000.00 to Wetland which the bank had already disbursed and which was part of the proceeds of the total loan request of $250,000.00. The $56,000.00 loan was secured by accounts receivable invoices. Handwritten notations of Mr. Boquet, the bank's vice-president, on the bank's loan memorandum dated March 24, 1975, also reflect that on April 2, 1975, $56,000.00 was disbursed to Wetland. Mr. Cook, a member of the bank's board of directors, but who evidently was not a member of the loan committee, examined the rig, along with Mr. Lathrop, and made his report prior to April 10, 1975. Mr. Cook felt that the rig was of limited value as collateral and recommended to the committee that all principals and all owners of Wetland personally endorse the loans.
On April 15, 1975 Sturdivant, as vice-president of Wetland, executed a chattel mortgage and chattel mortgage note in the sum of $200,000.00 at the offices of American Bank. Mr. Boquet closed those loan documents on behalf of the bank but no money was disbursed because the bank was awaiting the continuing guarantees of Deloney and Davenport who were not present at the April 15 closing. Three separate documents entitled "Continuing Guaranty" were entirely prepared by the bank, on the bank's form, guarantying the indebtedness of Wetland up to $200,000.00. On one of the forms, the bank typed "Mack H. Deloney, Chairman of the Board of W.W.I." on the signature line and which was signed by Deloney, "Mack H. Deloney." *944 Identical documents were prepared by the bank for Sturdivant and Davenport except that "Jim R. Sturdivant" Executive Vice-President of W.W.I." was typed on his and on the other "C. B. Davenport, President of W.W.I." was typed on the signature line and bore the signature "C. B. Davenport." All three documents bear the handwritten date of April 16, 1975. A hand note dated April 17, 1975, was executed by James R. Sturdivant, Vice-President of Wetland, on which date the $200,000.00 loan proceeds were disbursed. The back of the April 17th hand note was typed as follows and was signed by Sturdivant:
"Pledged [sic] by a pledge of demand chattal [sic] mortgage note dated April 15, 1975 in the amount of $200,000.00 covering a workover barge and rig with various equipment and under the name of Wetland Workover, Inc. Further secured by a pledge of three Continuing Guaranties, each in the amount of $200,000.00 and signed by C.B. Davenport, Mack H. Delony [sic] and Jim R. Sturdivant.
Wetland Workover, Inc.
 By: /s/ Jim R. Sturdivant
 /s/ V P"
American Bank made subsequent loans, some secured and others unsecured; all of which eventually became delinquent. American Bank filed six separate lawsuits against Wetland Workover, Inc. either originally or through amending and supplemental petitions, which included Davenport, Deloney and Sturdivant as defendants. The suits alleged that each was indebted to plaintiff in solido with Wetland on the basis that each defendant executed continuing guarantees in favor of American, guaranteeing Wetland's indebtness up to $200,000.00. Deloney and Sturdivant[1] asserted that the bank had no claim against them personally on the grounds that the agreements were executed in a representative capacity and not personally.
All six suits were consolidated and trial was held on the bank's claims against Sturdivant and Deloney in regard to their personal liability. The trial court rendered judgment against Deloney and Sturdivant finding that they had executed continuing guarantees on behalf of Wetland in their individual capacities.
In making its determination, the trial court found the following facts persuasive:
1) each gentleman provided American with personal financial statements two weeks prior to signing the continuing guarantee and the gentlemen never secured personal loans from the bank.
2) the loan committee minutes indicated that personal guarantees were required by the principals.
3) the loan memorandum indicated that personal guarantees were required and the net worth of the gentlemen listed on the memorandum matched that evidenced by the personal financial statements of the individuals.
4) Cook recommended that should a loan be made to Wetland, personal guarantees should be executed since the equipment offered was of insufficient value.
5) Sturdivant, Davenport and Deloney were advised funds would not be dispersed to Wetland until the three gentlemen executed continuing guarantees. The guarantees were prepared on April 15, 1975 and signed on April 16, 1975 with a disbursement of funds on April 17, 1975.
These facts, coupled with the testimony of Deloney and Sturdivant, led the trial judge to conclude that the defendants intended to sign the continuing guarantees in their individual capacities securing the indebtedness of Wetland. The defendants appealed.
The only contested issue in this matter was whether the execution of the documents was in an individual or representative capacity. The appellants contend that the agreement in question is not ambiguous and, therefore, the trial judge erred in admitting parol evidence to explain the instrument or intent of the parties.
*945 In his reasons for judgment, the trial judge stated:
A continuing guarantee is equivalent to a contract of suretyship and is intended to secure the indebtedness of another. By examining the wording of the Continuing Guarantees signed by Mack H. Deloney, Jim R. Sturdivant and C.B. Davenport, I conclude the instruments were suretyship agreements signed by the named parties in their individual capacities to secure the debt of the corporation, WWI, Inc.
This statement, and language throughout the reasons for judgment, would indicate that the trial judge found that the guarantees were personal guarantees of Wetland's principals for Wetland's debts despite the fact that the bank listed their corporate position in Wetland after their names.
We find that the trial judge's interpretation of the contract is clearly supported by the record in this instance. His conclusions are only logical when the signatures on the guarantees are compared to the signature on the back of the handnote issued for the loan or to the signatures on various other notes executed by Wetland in favor of the bank. On each of the guarantees, the bank had typed the endorser's name and his title, ie. "President of WWI", below the signature line on which each signed only his name. The notes, however, were all signed as follows:
Wetland Workover, Inc.
By: (Name of Officer) (Title of Officer)
The notation of corporate position on the guarantees is merely a title identification instead of a signature in a representative capacity. See, Fidelity National Bank of Baton Rouge v. Red Stick Wholesale Music Distributors, Inc., 423 So.2d 15 (La. App. 1st Cir.1982).
Moreover, to construe the signatures as indicating that the guarantors executed the guarantees in their corporate capacity, thus binding only the corporation, would render the documents meaningless. Under the terms of the mortgage and note prepared for the Wetland loan, Wetland was already bound to pay back the loan proceeds. If the guarantors had signed guarantees in a representative capacity for Wetland, the corporation would be guaranteeing an obligation for which it was already bound, rendering the guarantees worthless. See American Casualty Co. v. Howard, 175 So.2d 355 (La.App. 4th Cir. 1965). Unlike Hartford Accident & Indemnity Co. v. Louisiana Minority, Inc., 522 So.2d 1154 (La.App. 4th Cir.1988) where the challenged writing had effect by its terms, here the mortgage note and the guarantees must be interpreted together and in a manner which will make the loan transaction effective and meaningful. La. Civ. Code art. 2049.
Apart from the signatures, the clarity of each guarantee is shown by its terms:
In consideration of American Bank of Houma, at at our request, giving or extending terms of credit to Wetland Workover, Inc. hereinafter called debtor, we hereby give this Continuing Guarantee to the said American Bank of Houma....

We do furthermore bind and obligate ourselves, our heirs and assigns, in solido with said debtor, for the payment of the said indebtedness precisely as if the same had been contracted and was due or owing by us in person, hereby agreeing to and binding ourselves, our heirs and assigns, by all terms and conditions contained in any note or notes signed or to be signed by said debtor, making ourselves a party thereto. (Emphasis added)
The capacity in which a party executes a document is largely a matter of that party's intention as determined from the circumstances surrounding the transaction. American Bank & Trust Co. of Houma v. Wetland Workover, Inc., No. 10019, slip. op. (La.App. 4th Cir.1979). In the case at bar, the intent of the parties is necessary to give effect to the documents which would otherwise have no relevance if the defendants' argument was accepted by the court. We note, however, that there may be cases where the court need not consider intent, e.g. if the notes could be given a logical and meaningful effect by its own terms. At trial, the judge admitted *946 evidence concerning the intent of the bank and the guarantors. The fact that the judge received this evidence does not necessarily indicate that he considered the guarantees ambiguous or that he was required to do so. La.Civ.Code art. 2045 and accompanying comments.
Consequently, once the admissibility of the evidence regarding the intent of the parties is considered, there is only one logical interpretation of the guarantees. Additionally, prior to the loan approval, the defendants provided the bank with personal financial statements. The guarantors subsequently listed the Wetland debt as a personal, contingent liability when they later applied for personal loans at other banks.
Accordingly, we find that the trial judge correctly concluded that the defendants personally guaranteed Wetland's debt to American Bank and Trust Company of Houma and that it was not error on the part of the trial court to admit parole evidence in this particular situation. The judge's interpretation is clearly supported by the language of the guarantees in conjunction with the evidence of the parties' intent presented at trial. We, therefore, affirm the ruling of the trial court.
AFFIRMED.
GULOTTA, C.J., dissents with reasons.
BARRY, J., dissents for reasons assigned by GULOTTA, C.J.
GULOTTA, Chief Judge, dissents.
I respectfully dissent.
I find no ambiguity in the signatures on the continuing guarantees and the handnote. It is clear that the defendants signed the continuing guarantees in their corporate capacity as officers of Wetland Workover, Inc. As set forth in the language of the majority, which I adopt:
"Three separate documents entitled "Continuing Guaranty" were entirely prepared by the bank, on the bank's form, guarantying the indebtedness of Wetland up to $200,000.00. On one of the forms, the bank typed "Mack H. Deloney, Chairman of the Board of W.W.I." on the signature line and which was signed by Deloney, "Mack H. Deloney." Identical documents were prepared by the bank for Sturdivant and Davenport except that "Jim R. Sturdivant, Executive Vice-President of W.W.I." was typed on his and on the other "C.B. Davenport, President of W.W.I." was typed on the signature line and bore the signature "C.B. Davenport." All three documents bear the handwritten date of April 16, 1975. A hand note dated April 17, 1975, was executed by James R. Sturdivant, Vice-President of Wetland, on which date the $200,000.00 loan proceeds were disbursed. The back of the April 17th hand note was typed as follows and was signed by Sturdivant:
`Pledged [sic] by a pledge of demand chattal [sic] mortgage note dated April 15, 1975 in the amount of $200,000.00 covering a workover barge and rig with various equipment and under the name of Wetland Workover, Inc. Further secured by a pledge of three Continuing Guaranties, each in the amount of $200,000.00 and signed by C.B. Davenport, Mack H. Delony [sic] and Jim R. Sturdivant.
Wetland Workover, Inc.
 By: /s/ Jim R. Sturdivant
 /s/ V P'"
Because I find no ambiguity in the signatures on the continuing guarantees and the note, I find no basis for going outside of the four corners of the documents. I conclude that parol evidence should have been excluded.
Having so concluded, I find no reason to hold these defendants liable on the continuing guarantees in their individual capacities.
NOTES
[1] Davenport did not participate in the trial nor was judgment rendered against him since he had been discharged in bankruptcy.