642

596 A.2d 672

L & H ENTERPRISES, INC., et al.

v.

ALLIED BUILDING PRODUCTS CORPORATION.

No. 1826, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Oct. 3, 1991.

Merle F. Maffei, Annapolis, for appellants.

Susan Pittard (Miller John Poppleton, Jr., Richard M. Sissman and Protas & Spivok, Chartered, on the brief), Bethesda, for appellee.

Argued before ROSALYN B. BELL, CATHELL and DAVIS, JJ.

ROSALYN B. BELL, Judge.

In March of 1986, appellants, L & H Roofing, Inc., trading as L & H Enterprises, Inc. (L & H), applied for

credit with appellee, Allied Building Products Corporation (Allied). The arrangement called for credit to be extended by Allied for the purchase of building materials on an open account.

The form used in the credit application process was the standard Allied Credit Application. The credit form was filled out and signed by Donald L. Hataloski and Peter Scott Lord, who were the president and vice president/treasurer, respectively, of L & H. Materials were then shipped and delivered at the request of Lord and/or Hataloski. Separate invoices were generated each time an order was placed.

On or about August 16, 1988, L & H failed to pay the account then due. Allied then made numerous demands for payment, commencing in 1988. When the invoice rendered by Allied in the amount of $17,304.61 remained unpaid, Allied filed suit against L & H. Additionally, citing what it claimed to be a "personal guarantee" by Hataloski and Lord for the debt of L & H, Allied joined Hataloski and Lord personally on the debt suit.

Allied based its claim of personal liability on guaranty language in its credit application which provides:

"In consideration of Allied Roofers Supply Corp., its subsidiaries or affiliates, extending credit I/we jointly and severally do guarantee unconditionally at all times, to Allied Roofers Supply Corp., its subsidiaries or affiliates, the payment of indebtedness, or balance or indebtedness of the within named firm.

"(All partners or officers should sign.)"

Allied claims that Lord and Hataloski signed the credit application in their personal capacity and thus became guarantors of the corporate debt.

Extensive preliminary activity then began. Allied's complaint and a Motion for Partial Summary Judgment were originally filed in the Circuit Court for Howard County. On February 7, 1990, the court granted Allied's motion for partial summary judgment. Judgment was later vacated and the motion reopened after L & H filed a motion to

vacate judgment premised upon defective or no service. The reopened motion for partial summary judgment was then denied. Allied next submitted a second motion for summary judgment, but before a ruling had been made, the case was transferred to the Circuit Court for Anne Arundel County in response to a motion by L & H for a change of venue.

In October of 1990, a hearing was held on Allied's second motion for summary judgment and the circuit court granted summary judgment in favor of Allied against L & H, Hataloski and Lord, jointly and severally, in the amount of $17,304.61, plus interest at a rate of 18 percent per annum, reasonable attorney's fees of $3,430, and costs for a total judgment figure of $27,051.51.

From this ruling L & H, Hataloski and Lord appeal, contending that the circuit court erred:

—in entering summary judgment based on the credit application document submitted by Allied, notwithstanding affidavits and testimony disputing personal liability; and

—in inferring that Hataloski and Lord were personally liable for the corporate debt of L & H based on the wording of the guaranty clause in the credit application.

Based on ambiguities we find present in the language of the credit application as a whole, we hold that extrinsic evidence should be considered to determine in what capacity Lord and Hataloski signed the contract. We therefore vacate the judgment as to Lord and Hataloski, personally, and remand the case for a full trial as to them. Since L & H, as a corporate entity, has not raised any defense to the debt owed to Allied on appeal, we affirm the judgment with respect to the debt owed by L & H.

## SUMMARY JUDGMENT

The standard governing summary judgment is well settled in Maryland. Rule 2–501(e) states:

"The courts shall enter judgment in favor of or against the moving party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

In *Coffey v. Derby Steel Co.*, 291 Md. 241, 246, 434 A.2d 564 (1981), the Court of Appeals said that

"in reviewing the granting or denial of a motion for summary judgment, all inferences ... must be resolved against the moving party. If the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law, then the judgment sought shall be rendered forthwith."

*See Berkey v. Delia*, 287 Md. 302, 304, 413 A.2d 170 (1980); *Honaker v. W.C. & A.N. Miller Dev. Co.*, 285 Md. 216, 231, 401 A.2d 1013 (1979); *Merchants Mtg. Co. v. Lubow*, 275 Md. 208, 217, 339 A.2d 664 (1975).

 In considering whether a dispute remains surrounding a material fact, the court "must accord great deference to the ... party against whom the motion for summary judgment has been filed." *Syme v. Marks Rentals, Inc.*, 70 Md.App. 235, 238, 520 A.2d 1110 (1987). Even if the facts in the case are undisputed, "if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact." *Syme*, 70 Md.App. at 238–39, 520 A.2d 1110.

### Ambiguity

 The outcome of this case turns on whether the credit application is ambiguous. In *Insel v. Solomon*, 63 Md.App. 384, 396, 492 A.2d 963 (1985), this Court articulated the standard which controls the interpretation of contract language: "[i]f the language is clear, it controls; if it is ambiguous, the court may consider extrinsic factors in

ascertaining what the parties intended." This Court has also stated that an "[a]mbiguity arises if, to a reasonably prudent person, the language used is susceptible of more than one meaning and not where one of the parties disagrees as to the meaning of the subject language." *Board of Education of Charles County v. Plymouth Rubber Co.*, 82 Md.App. 9, 26, 569 A.2d 1288 (1990).

Allied argues that under the objective theory of contracts the court must stick to the four corners of the credit application and agreement to determine what a reasonable person in the position of the parties would have understood the agreement to mean at the time it was executed. *Aetna Casualty Ins. Co. v. Insurance Comm'r*, 293 Md. 409, 420, 445 A.2d 14 (1982); *Board of Trustees of State Colleges v. Sherman*, 280 Md. 373, 380, 373 A.2d 626 (1977); *Sagner v. Glenangus Farms*, 234 Md. 156, 162, 198 A.2d 277 (1964); *Insel v. Solomon*, 63 Md.App. at 395, 492 A.2d 963. Allied claims that, when the guaranty provisions are read within the context of the entire agreement, the language is clear, certain and unambiguous. It is precisely that reading, however, that leads us to the opposite conclusion.

The first page of the Allied credit application requires the persons filling out the agreement to list their firm's name, address, whether the business is incorporated, give the corporate attorney's name and address, and identify corporate officers by their title. Hataloski and Lord did so, indicating in each space provided information pertaining only to the corporation. They did, however, list their residence addresses in the part of the form that called for information to be given by an owner, partner or president. In those same sections, however, where the application called for the listing of the spouse's name, both Hataloski and Lord filled in "N/A" (not applicable). This tends to show an intent only to bind the corporation because the available evidence points to the fact that at least Lord was married at the time and it would be impossible for Allied to reach joint marital assets without the signature of Lord's spouse. The second page follows in a similar fashion,

asking for other firms that have advanced open credit to L & H.

The disputed clause then follows, specifying that "[a]ll partners and officers should sign." Again, it is unclear from this language whether Hataloski and Lord were supposed to sign in their personal or representative capacity. But if these signatures were not in their representative capacity, the corporate credit application would be incomplete. That certainly makes no sense because the application was for credit to be extended to L & H.

The ultimate ambiguity arises when the clauses just before the provision upon which Allied relies to support its claim of liability are read:

"[1.] I/we authorize you to contact all credit and trade references herein to verify our credit standing with them.

"[2.] Invoices past due thirty days are subject to a one and one half percent Service Charge per month.

"[3.] If it becomes necessary to effect collection, I/we agree to pay all costs of collection including reasonable court costs and attorney fees."

The next provision is the guaranty clause followed by the signatures of Lord and Hataloski. This was the only place on the credit application where a signature was required and the only place where Lord and Hatalowski did, in fact, sign.

In order to investigate the credit and trade references of L & H, Allied needed the authorization of the corporation. In order to charge interest to L & H, Allied needed the agreement of L & H. In order to secure attorney's fees for collection, Allied needed the agreement of L & H. It is unclear whether Allied investigated L & H's credit rating, but Allied did charge L & H interest and included that interest in its complaint. Allied did add attorney's fees and that also appeared in the complaint, and was a part of the judgment. So for those purposes, Allied could be found to have dealt with the signatures of Lord and Hataloski as being in their representative capacity. While the guaranty

language itself may be clear and unambiguous, when read with "1" through "3," the nature of the signatures becomes ambiguous.

In *Volume Tire Co. v. O'Conner*, 190 Ga.App. 242, 378 S.E.2d 415, 416 (1989), the Court of Appeals of Georgia held that summary judgment was inappropriate where an open credit agreement signed by the corporation's president did not indicate whether he was signing as guarantor or as president. The Georgia Court held this to be a question of fact to be resolved through the use of parol evidence, including the affidavits of both parties to the dispute. We hold this to be applicable to the case now before us.

Another factor that may be considered in resolving the understanding of the parties regarding the disputed clause is testimony given by Lord at the summary judgment hearing, over objection of Allied's counsel, in which he described a separate personal guaranty he had made to Allied in 1982 for a then outstanding debt of L & H.[1] In his

---

1. Lord's testimony is as follows:
 "BY [COUNSEL FOR L & H]:
 \* \* \* \* \* \*
 "Q Well, can [—] describe that situation.
 "A We were late [—]
 "[COUNSEL FOR ALLIED]: Again, Your Honor, I'm going to object.
 "[COUNSEL FOR L & H]: Your Honor, I think this is [—]
 "COURT: Well, I'm [—] let him testify.
 "[COUNSEL FOR L & H]: [—] relevant.
 "A L & H Enterprises was behind on our payments, and Gene Wilson [Allied's representative] said he was going to have to file liens against our jobs,- and he said to get his boss off of his back, if we, Donnie [Hataloski] and I, could write a letter to him stating that we would be personally responsible for the outstanding balance at that time [—]
 "[COUNSEL FOR ALLIED]: Your Honor, again, object, This is a hearsay statement to prove the truth of the matter asserted.
 "COURT: Well, self-serving anyway. Sustained.
 "BY [COUNSEL FOR L & H]:
 "Q Did you ever agree to personally guaran [—] personally guarantee any payment to Allied?
 "A Yes.
 "Q And how much was that?

previous dealings with Allied, Lord had personally guaranteed a debt owed to Allied only through a separate instrument made after L & H had been unable to pay its debt as it came due.

Allied further argues that Lord and Hataloski did not properly plead estoppel and waiver defenses in their answer and thus raised no genuine dispute of material fact. We need not address this contention, however, since we have determined that the ambiguity in the contract clause and the conflicting testimony and affidavits of Allied, Lord and Hataloski create an issue of fact over the capacity in which Lord and Hataloski signed the agreement.

### Construed Against the Maker or Drafter

Allied asserts that there is language in the guaranty clause that leads to the inference that the parties were personally and unconditionally guaranteeing the indebtedness of L & H. Two such clauses are "I/we jointly and severally" and "within named firm." A reasonable person could determine from this language that Allied meant to bind corporate officers personally on the corporate debt. This is, however, a factual question that takes the case out of the realm of summary judgment.

In addition, where an ambiguity exists in a contract, the ambiguity is "resolved against the party who made it or caused it to be made, because that party had the better opportunity to understand and explain his meaning." *King v. Bankerd,* 303 Md. 98, 106, 492 A.2d 608 (1985); *see Truck Insurance Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 435, 418 A.2d 1187 (1980). In the instant case, the form used to open the account was Allied's standard boilerplate

---

"A Eight thousand dollars. It was 82 [—] I don't know what the number was exactly.
"Q And was that amount paid by you?
"A Yes, it was.
"Q Did you personally guarantee [—] agree to guarantee any other payment of L & H?
"A No, sir. No."

credit application. There is no additional language in the document that helps to explain the guaranty clause, nor does it appear that any Allied representative explained to either Lord or Hataloski what the relevant terms of the agreement were.

On cross-examination at the summary judgment hearing, Allied's attorney asked Lord:

"Q Did anyone force you to sign this application?

"A No.

"Q Did you have the opportunity to read the application?

"A The salesman was in our office and wanted this form filled out, and we did it quickly, I think."

"Q Did he prevent you from reading it?

"A No."

While there is no evidence in the record indicating that there was any fraud or duress involved in the signing of the agreement, the Allied salesman present did not appear to have explained any of the relevant provisions, including the guaranty clause. Thus, in construing the language of the credit application against its maker, Allied, we cannot unequivocally state that no ambiguity exists.

### Pertinent Law

Allied argues that the provisions of Title 3 of the Md. Com.Law Code Ann., while not determinative in the case, should guide the court in its analysis of the capacity of Lord's and Hataloski's signatures in the agreement. Allied argues that Md.Com.Law Code Ann. § 3–403(2)(a) (1975), is relevant in deciding the obligations of Lord and Hataloski on the note. Section 3–403(2)(a) provides:

"(2) An authorized representative who signs his own name to an instrument

"(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity[.]"

This provision was used in *Lainier v. Bank of Virginia–Potomac*, 39 Md.App. 589, 594, 387 A.2d 614 (1978), to hold the president of a corporation personally liable on a promissory note he had signed in favor of the bank. Lainier had signed the note and followed his signature with the designation "Pres." immediately following his signature. Below Lainier's signature appeared the half-printed, half-script word "President." To the right of the signature under the word "addresses" appeared the address of the corporation. Finding no material alterations in the note, the court held that Lainier was personally liable on the note based on his endorsement.

*Lainier* can, however, be distinguished from the case now before us. *Lainier* and the line of cases associated with it all involve checks, promissory notes, or other negotiable instruments. *Lesser v. Todd Cigarette Serv. Co.*, 267 Md. 524, 298 A.2d 151 (1973) (parol evidence inadmissible to limit individual responsibility on a check unambiguously endorsed); *Belmont Dairy Co. v. Thrasher*, 124 Md. 320, 92 A. 766 (1914) (officer of corporation held prima facie personally liable where he signed his name to a promissory note without the name of the corporation or a designation of who he was signing for in a representative capacity).

In the instant case, the guaranty clause of the Allied credit application contains an unconditional promise to pay; but it lacks many of the other elements that would render it a negotiable instrument. Md.Com.Law Code Ann. § 3–104. Even though the underlying purpose of the Code is to "simplify, clarify and modernize the law governing commercial transactions," Md.Com.Law Code Ann. § 1–102(2)(a), where there is no negotiable instrument involved, Title 3 is not controlling.

Neither party has pointed to, nor have we been able to discover, any Maryland cases that apply § 3–403(2)(a) to nonnegotiable instruments. We have, however, found cases from other states that reach similar conclusions. In *Puckett v. Codisco, Inc.*, 440 So.2d 596 (Fla.App. 2 Dist.1983), the

District Court of Appeal of Florida for the Second District was presented with a credit application similar to the one before us. The Florida Court held that parol evidence was admissible to explain the language of the guaranty clause. *Puckett*, 440 So.2d at 599. In addition, the Florida Court also stated that the credit application was not a negotiable instrument and thus, the Court was not bound by the law interpreting negotiable instruments under the Uniform Commercial Code. *Puckett*, 440 So.2d at 599.

In a recent Massachusetts case, *NRF Distributors, Inc. v. U.S. Carpet, Inc.*, 1990 WL 270767 (Mass.App.Div.), the president and treasurer of a corporation were held individually and personally liable for the amount of the corporation's purchase under the guaranty section of the corporate credit application. The two had signed their names to the application, followed by a designation of their corporate title. This Massachusetts case can, however, be distinguished from the one now before us. The guaranty clause in the Massachusetts case, signed by the officers of U.S. Carpet, followed language that clearly fixed personal liability on the individual officers.[2] Thus, when read with the preceding paragraph, the guaranty language is unambiguous. It states: "[i]n consideration of your extending credit to the above firm at the undersigned's request, the undersigned hereby *personally* guarantee the payment of

---

**2.** The predicate language in the NRF Distributors credit application states:

"In making this application, the undersigned understand that all accounts are payable according to the terms as shown on each invoice, and if not paid on or before said date are then delinquent. The undersigned agree to pay [any] and all service charges added each month on past due invoices. All charges are due and payable in full ... unless notified in writing to the contrary. If credit is granted, the undersigned agree to the above terms and the undersigned are responsible for payment of the account. The undersigned do further agree that if the account must be placed in the hands of an attorney for collection, or if collection is made through probate proceedings, the undersigned will pay a reasonable amount in attorney's fees. It is further understood that when payment is not made in accordance with the terms of each invoice, shipment of future orders will be withheld."

all of their obligations to you...." (Emphasis added). The provision clearly identified U.S. Carpet as the entity primarily responsible for the goods purchased on credit and unequivocally set forth the personal guaranty of the defendants for the corporate debt. In holding the defendants personally liable, the Massachusetts appellate court stated, "[t]he credit application at issue is not a negotiable instrument within the purview of Article 3 of the Uniform Commercial Code."

In *Clendenin Lumber & Supply Co. v. Volpi*, 365 S.E.2d 56 (W.Va.1987), the Supreme Court of Appeals of West Virginia reached a similar conclusion. Although it found that Volpi, a vice president of a corporation extended credit by Clendenin, had undertaken to personally guarantee the corporate debt,[3] the Court also held that the credit application signed by Volpi was not a negotiable instrument, *Clendenin*, 365 S.E.2d at 57, and thus outside the provisions of the West Virginia Code governing guaranty agreements in the context of negotiable instruments.

### Standard of Review

 Finally, Allied argues that this court may be bound by the "clearly erroneous" standard of review set forth in *Admiral Builders v. South River Landing*, 66 Md.App. 124, 128–29, 502 A.2d 1096 (1986); *see* Rule 8–131(c). Under this standard of review, a writing will not be re-examined on appeal to determine if it is ambiguous; rather, the decision of the trial court is reviewed to determine if it is legally sufficient. Allied goes on to state that the trial court made a "credibility" finding in reaching its

---

**3.** The guaranty clause signed by Volpi stated:
"I and/or we certify the truthfulness and veracity of the statement appearing above and I and/or we guarantee and bind ourselves to the faithful payment of all amounts purchased or now owing, by us or either of us, or any other person, firm, or corporation for our benefit. If credit is extended to a corporation in which we, or either of us, or I am an officer, or in which an interest exists, I and/or we will *personally* faithfully guarantee the payment of all credit extended to said corporation." (Emphasis added).

conclusions that should be upheld by this Court on appeal. This argument is, however, inapposite to Allied's position. The issue of credibility is a factual determination and is not an issue to be decided on summary judgment. *Coffey*, 291 Md. at 247, 434 A.2d 564; *Berkey*, 287 Md. at 332, 413 A.2d 170. Indeed, the issue of credibility goes directly to the heart of whether there is a material fact in dispute.

In reviewing the granting of summary judgment, we find that the guaranty clause of the Allied credit application to be ambiguous. This opens the door to extrinsic evidence and raises a dispute as to a material fact. Therefore, Allied was not entitled to summary judgment as a matter of law.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.