17 A.3d 168

**Uduak J. UBOM, et al.**

v.

**SUNTRUST BANK.**

No. 2862, Sept. Term, 2009.

Court of Special Appeals of Maryland.

April 4, 2011.

Uduak J. Ubom, Washington, D.C., for appellant.

Sarah D. Cline (Matthew A. Egeli, Hartman & Egeli, LLP, on the brief), Annapolis, MD, for appellee.

Panel: KRAUSER, C.J., MATRICCIANI, and GRAEFF, JJ.

GRAEFF, J.

This appeal arises out of a default on a commercial line of credit. The lender, SunTrust Bank ("SunTrust"), appellee, filed a Complaint in the Circuit Court for Montgomery County against Ubom Law Group, PLLC ("ULG"), and Uduak J. Ubom after ULG failed to make scheduled monthly payments on the account. The circuit court granted summary judgment in favor of SunTrust and against ULG and Mr. Ubom, jointly

and severally, in the amount of $65,715.60, plus $4,129.65 for pre-judgment interest, $9,857.34 for attorney's fees, and costs.

Mr. Ubom appealed. He does not dispute the validity of the judgment against ULG, but he contends that the judgment against him personally was erroneous. He presents four questions for our review,[1] which collectively question the propriety of the circuit court's ruling granting summary judgment in favor of SunTrust based on its finding that Mr. Ubom's signature as a guarantor of a commercial line of credit was in an individual capacity, as opposed to as a representative of the law firm.

For the reasons that follow, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

ULG is a professional limited liability company that provides legal services. Mr. Ubom is the managing attorney and sole owner of ULG.

---

1. Mr. Ubom presented the following four questions for our review:
 1. Whether the trial [c]ourt erred in granting summary judgment to [appellee], against ULG, and Uduak J. Ubom, where the Fast Access Line of Credit Application and Agreement was between [appellee] and ULG, and Uduak J. Ubom, is appended as the Managing Partner.
 2. Whether the trial [c]ourt erred in granting summary judgment to [appellee], against ULG, and Uduak J. Ubom, where the Fast Access Line of Credit Application and Agreement was between [appellee] and ULG, and does not include Uduak J. Ubom's name as the guarantor of the Loan.
 3. Whether the trial [c]ourt erred in granting summary judgment to [appellee], against ULG, and Uduak J. Ubom, where the Fast Access Line of Credit Application and Agreement was between [appellee] and ULG, and Uduak J. Ubom was instructed by [appellee] not to include his name as the guarantor, but to sign the form in his official capacity as the Managing Partner of ULG.
 4. Whether the trial [c]ourt erred in granting summary judgment to [appellee], against ULG, and Uduak J. Ubom, without allowing Defendant Uduak James Ubom to testify to the fact that he was assured by [SunTrust], that he was not personally liable for the line of credit, as such he should not write his name in the Fast Access Line of Credit Application and Agreement column (Legal Name of Guarantor).

On August 12, 2006, ULG filled out a "FastAccess Line of Credit Application and Agreement" ("Agreement") to obtain a line of credit from SunTrust in the amount of $100,000. The first page of the Agreement included information regarding the applicant, ULG. The second page of the Agreement included information regarding the guarantor. In the "Guarantor Information" section, Mr. Ubom included, among other things, his date of birth, address, phone number, social security number, driver's license number, employment, and financial information. He did not, however, include his name in the section marked "Legal Name of Guarantor."

The last page of the Agreement contained signatures. Mr. Ubom signed his name twice; once on the signature line for "Applicant" and once on the signature line for "Guarantor." After both signatures, in the box marked "Title," Mr. Ubom wrote "Managing Attorney."

On August 17, 2006, SunTrust sent a letter to ULG advising that its application for a line of credit of $100,000 had been approved. SunTrust also sent ULG a Check Access Rider, which included additional terms and conditions of the loan.

On May 29, 2009, SunTrust filed a Complaint in the Circuit Court for Montgomery County against ULG and Mr. Ubom, asserting: (1) that ULG had failed to make the scheduled monthly payments due on the account; and (2) that Mr. Ubom "had personally guaranteed the payment to SunTrust of all obligations and liabilities" arising under the Agreement. The Complaint alleged that the amount due on the account was $65,715.60 in principal, $2,109.35 in interest, and $9,857.34 in attorney's fees.[2] SunTrust requested that the court "grant judgment in its favor against [ULG] and [Mr. Ubom], jointly and severally," in the above amount, plus "pre-judgment interest accruing at the rate of $9.45 per day from May 13, 2009."

---

**2.** The attorney's fees were calculated per the Agreement, which provided that the applicant (and/or guarantor) agreed to pay all costs of collection, including attorney's fees of fifteen percent of the principal balance owed on the account, if the account was referred to an attorney for collection.

On July 13, 2009, Mr. Ubom filed an answer on behalf of himself and ULG. The answer generally denied SunTrust's allegations, and it stated that the defendants had "made a good faith offer of settlement of the account, which was rejected by" SunTrust. The answer did not set forth any affirmative defenses.

On October 14, 2009, SunTrust filed a motion for summary judgment, asserting that it was entitled to judgment as a matter of law. On November 20, 2009, Mr. Ubom filed a motion to dismiss and/or opposition to SunTrust's motion for summary judgment. Mr. Ubom acknowledged that ULG defaulted on the Agreement, but he argued that the court should dismiss him as a party or grant summary judgment in his favor because he signed the Agreement in his official capacity as Managing Partner of ULG, not as a personal guarantor of the loan.[3]

On January 7, 2009, the court held a hearing on SunTrust's motion for summary judgment. Mr. Ubom argued that, after he obtained a home equity loan from SunTrust, "the manager convinced [him] that [he] had to get one for [his] business." Mr. Ubom asserted that the SunTrust representative told him that, although he was signing as guarantor on the ULG Line of Credit, he could avoid personal liability by: (1) not including his name on the second page of the Agreement that asked for the legal name of the guarantor; and (2) by writing "Managing Partner" after his signature on the fourth page of the Agreement.

Counsel for SunTrust argued that the Agreement was "clear and unambiguous on its face," and it created a personal guaranty by Mr. Ubom. Counsel noted that Mr. Ubom's personal information was listed under the section titled "Guarantor Information" and Mr. Ubom signed on the line titled "Signature Guarantor."

---

3. At the hearing on the motion, as well as at argument on appeal, Mr. Ubom confirmed that he did not dispute that ULG was liable for the amount owed on the line of credit; he disputed only that he was personally liable.

The court found that the Agreement, which contained Mr. Ubom's signature as guarantor, was a personal guaranty, noting that Mr. Ubom was "a sophisticated gentleman ... an attorney ... at law." Accordingly, the court granted summary judgment in favor of SunTrust and against ULG and Mr. Ubom.

This timely appeal followed.

## DISCUSSION

■ Mr. Ubom argues that the court erred in granting summary judgment in favor of SunTrust against him personally. He asserts that he "signed the [A]greement in his official capacity as Managing Partner [of] ULG," and he "did not sign the Agreement personally guaranteeing the obligations of ULG." Mr. Ubom further asserts that the court erred in preventing him from presenting testimony that he was assured by SunTrust that he would not be personally liable for the line of credit.

SunTrust argues that the circuit court correctly found that the Agreement created a personal guaranty on the part of Mr. Ubom. It asserts that the Agreement, which contains Mr. Ubom's signature as the guarantor, is "clear and unambiguous" in creating a personal guaranty on the part of Mr. Ubom.

In reviewing a trial court's grant of summary judgment, "we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Reiter v. Pneumo Abex, LLC,* 417 Md. 57, 67 (2010) (quoting *Livesay v. Baltimore County,* 384 Md. 1, 10, 862 A.2d 33 (2004)). A material fact is one which is "necessary to the determination of the case." *Id.* at 68. We " 'review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the movant.' " *Id.* at 67 (quoting *Livesay,* 384 Md. at 9, 862 A.2d 33).

In this case, there is no dispute of material fact. Mr. Ubom does not dispute that the identifying information contained in

the section titled "Guarantor Information" is his personal information or that his signature appears on the line captioned "Signature (Guarantor)." The question before us is a legal one, whether Mr. Ubom signed his name in his capacity as an officer of the corporation or whether it was a personal guaranty.

■ Before addressing the merits of the issue, we note that Mr. Ubom, in arguing that his signature did not create a personal guaranty, has cited no case law in support of this assertion. On this basis alone, we could reject his contention. *See Conrad v. Gamble,* 183 Md.App. 539, 569, 962 A.2d 1007 (2008) (declining to address issue because appellants' argument was "completely devoid of legal authority") (quotation omitted); *Marquis v. Marquis,* 175 Md.App. 734, 758, 931 A.2d 1164 (2007) (" 'It is not our function to seek out the law in support of a party's appellate contentions.' ") (quoting *Sodergren v. Johns Hopkins Univ. Applied Physics Lab.,* 138 Md.App. 686, 707, 773 A.2d 592 (2001)); *Anderson v. Litzenberg,* 115 Md.App. 549, 577–78, 694 A.2d 150 (1997) (refusing to address argument because appellants failed to cite any legal authority to support their contention of error), *cert. denied,* 368 Md. 239, 792 A.2d 1177 (2002).[4]

■ Nevertheless, although "dismissal may be an appropriate sanction, whether to employ it is a matter left to the exercise of this Court's discretion." *Esteps Elec. & Petroleum Co. v. Sager,* 67 Md.App. 649, 657, 508 A.2d 1032 (1986). We will exercise our discretion to consider Mr. Ubom's claim.

---

4. Additionally, Mr. Ubom failed to reference the pages of the record extract to which many of his factual assertions refer. This too is a basis to dismiss an appeal. *Rollins v. Capital Plaza Assocs., L.P.,* 181 Md. App. 188, 201, 955 A.2d 869, *cert. denied,* 406 Md. 746, 962 A.2d 372 (2008) (dismissing appeal where appellant, *inter alia,* "failed to provide sufficient reference to pages in the record extract supporting the facts asserted"); *Vandegrift v. State,* 82 Md.App. 617, 633, 573 A.2d 56, *cert. denied,* 320 Md. 801, 580 A.2d 219 (1990) (appellate court is "not required to ferret out from the record factual support favorable to [appellant's] argument").

 Maryland courts adhere to the principle of the objective interpretation of contracts. *Ocean Petroleum Co. v. Yanek*, 416 Md. 74, 86 (2010). Pursuant to this principle, " 'unless a contract's language is ambiguous, we give effect to that language as written without concern for the subjective intent of the parties at the time of formation.' " *Id.* (quoting *Cochran v. Norkunas*, 398 Md. 1, 16, 919 A.2d 700 (2007)). We restrict our inquiry to " 'the four corners of the agreement,' " *id.* (quoting *Cochran*, 398 Md. at 17, 919 A.2d 700), and "ascribe to the contract's language its 'customary, ordinary, and accepted meaning.' " *Id.* (quoting *Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194 (2001)). The Court of Appeals has made clear that, when language in a contract is unambiguous, and absent "fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract. Only when the language of the contract is ambiguous will we look to extraneous sources for the contract's meaning." *Brendsel v. Winchester Constr. Co.*, 392 Md. 601, 624, 898 A.2d 472 (2006) (citations and quotations omitted).

 Ambiguity will be found if, to a reasonable person, the language used is susceptible to more than one meaning, or it is of a doubtful meaning. *Anderson Adventures, LLC v. Sam & Murphy, Inc.*, 176 Md.App. 164, 179, 932 A.2d 1186 (2007). "To determine whether a contract is susceptible of more than one meaning, the court considers 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution.' " *Id.* at 178, 932 A.2d 1186 (quoting *Phoenix Serv's Ltd. P'ship v. Johns Hopkins Hosp.*, 167 Md.App. 327, 392, 892 A.2d 1185 (2006)). "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law," which we review *de novo*. *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540 (2003).

In *L & H Enterprises, Inc. v. Allied Building Prod. Corp.*, 88 Md.App. 642, 646–47, 596 A.2d 672 (1991), this Court applied these principles in the context of the issue presented

here, *i.e.*, whether a guaranty of a corporation's obligation, signed by a corporate officer, was signed in the officer's representative or individual capacity. In that case, L & H Roofing, Inc., trading as L & H Enterprises (the "roofing company"), applied for credit with the appellee. The credit application was signed by the roofing company's president and the vice president/treasurer. *Id.* at 643, 596 A.2d 672. When the roofing company failed to make payment, appellee sued the company and the corporate officers personally. *Id.* The claim of personal liability was based on the following guaranty language:

> In consideration of Allied Roofers Supply Corp., its subsidiaries or affiliates, extending credit I/we jointly and severally do guarantee unconditionally at all times, to Allied Roofers Supply Co., its subsidiaries or affiliates, the payment of indebtedness, or balance or indebtedness of the [roofing company].
>
> (All partners or officers should sign).

*Id.* at 644, 596 A.2d 672.

This Court looked to several factors in determining whether that agreement was ambiguous with respect to the capacity in which the corporate officers signed the contract. *Id.* at 645, 596 A.2d 672. Initially, we looked at the first page of the application seeking information about the applicant. *Id.* at 647, 596 A.2d 672. We noted that the credit application required information about the corporation and the corporate officers, and where the application requested the name of the spouse of the corporate officers, both officers filed in "N/A" (not applicable). *Id.* We stated that this tended to show "an intent to only bind the corporation" because Allied could not reach joint marital assets without the signature of the officer's spouse. *Id.* at 647, 596 A.2d 672.

Moreover, significant to this case, there was only one place on the application for the signature of the officers. *Id.* at 648, 596 A.2d 672. We noted that portions of the agreement, such as authorization to investigate credit references and charge interest, required the agreement of the corporation. *Id.* For

these purposes, the officers' signatures appeared to be in their representative capacity. *Id.* Accordingly, after reviewing the entire agreement, we held that, although the guaranty language itself may have been clear and unambiguous, when read in the context of the entire agreement, the contract was ambiguous regarding whether the officers of the corporation signed in a personal or representative capacity. *Id.* at 648–49, 596 A.2d 672.

As in *L & H Enterprises, Inc.,* we will look at the Agreement as a whole to determine whether Mr. Ubom signed the guaranty in a personal or representative capacity. Starting first with the form of the signature, this case is unlike *L & H Enterprises,* 88 Md.App. at 648, 596 A.2d 672, where the corporate officers signed only one time, and the contract needed the signature of the corporation. Here, there were two signature lines, one for "Applicant," the law firm, and one for "Guarantor." Mr. Ubom signed his name on both signature lines. Under these circumstances, a reasonable interpretation of the guaranty is that Mr. Ubom was signing in his personal capacity. *See Curtis G. Testerman Company v. Buck,* 340 Md. 569, 578, 667 A.2d 649 (1995) (when intent that officer of corporation be personally liable on a contract, " 'nearly universal practice is that the officer signs twice-once as an officer and again as an individual' ") (quoting *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 217 N.Y.S.2d 55, 176 N.E.2d 74, 76 (1961)).

Indeed, a finding that Mr. Ubom signed the guaranty in a representative capacity would render the guaranty inconsequential; it would add nothing to SunTrust's security to have the law firm, through its Managing Partner, guaranty an obligation to which the law firm already was bound. *See Home Fed. Sav. & Loan Ass'n v. Ramos,* 229 Cal.App.3d 1609, 284 Cal.Rptr. 1, 3 (1991) (finding guaranty to be corporate, rather than personal, would be objectively unreasonable because the corporation was already bound under the contract); *American Bank & Trust Co. v. Wetland Workover, Inc.,* 523 So.2d 942, 945 (La.Ct.App.) (if guarantors signed in a representative capacity, the corporation would be guarantying an

obligation for which it was already bound, rendering guaranty worthless), *cert. denied,* 531 So.2d 283 (La.1988); *American Petrofina Co. of Texas v. Bryan,* 519 S.W.2d 484, 487 (Tex.Civ. App.1975) ("[T]o hold that [the corporation] is the only defendant liable under the terms of the written guaranty [signed by the officers] is to hold that the guaranty is meaningless."). *See also Cadle Co. v. Webb,* 66 Mass.App.Ct. 269, 846 N.E.2d 1179, 1182 (2006) (the ordinary meaning of the word guaranty is that "some one else is primarily liable for a debt and that the guarantor will pay it if the primary debtor does not") (quoting *Charlestown Five Cents Sav. Bank v. Wolf,* 309 Mass. 547, 36 N.E.2d 390, 391 (1941)).

Mr. Ubom argues, however, that his listing of his title, Managing Attorney, next to his signature as guarantor shows that his signature was in a representative capacity. A corporate officer, however, is not relieved of personal liability by the mere addition of his corporate title. *See Maske v. Chrysler First Commercial Corp.,* 602 So.2d 388, 390 (Ala.1992) (officer's addition of his corporate title to his signature as guarantor was merely descriptive and did not change the personal capacity in which he signed); *American Petrofina Company of Texas,* 519 S.W.2d at 487 (signatures by corporate officers, listing titles of President and Secretary of the corporation, did not show intent to bind corporation or create ambiguity regarding personal liability; the designations were "only descriptio personae"). *Accord* 12 RICHARD A. LORD, WILLISTON ON CONTRACTS § 35.56, at 466–68 (4th ed. 1999) ("Historically, it has been generally held that the mere addition of the word 'agent' or official designations such as 'president,' 'treasurer,' 'secretary,' 'trustee,' and the like, in the absence of words in the body of the instrument showing a different intent, is to be treated as a matter of description, and the agent or official is personally the contracting party.").

Moreover, the language in the Agreement as a whole shows an intent to fix personal liability on Mr. Ubom as guarantor. On page three of the Agreement, in the section entitled "Guaranty," the Agreement states, *inter alia,* the following:

> To induce Bank to open the Account and extend credit to the applicant, or to renew or extend such other credit, **each of the individuals signing this Application as a "Guarantor"** (whether one or more, the "Guarantor") **hereby jointly and severally guarantee payment to Bank of all obligations and liabilities of the applicant of any nature whatsoever** and whether currently existing or hereafter arising, including without limitation, all obligations and liabilities under this Application and/or the Account, and reasonable fees and expenses of Bank's attorney(s) incurred in the collection of such obligations (collectively the "Obligations").

(Emphasis added).

This language is clear and unambiguous. It specifically identifies the applicant, ULG, as the entity primarily responsible for the line of credit, and the **individual** signing as guarantor, as jointly liable for the obligations of ULG. This language clearly contemplates that Mr. Ubom was signing as guarantor in his personal capacity.

Another provision makes clear that Mr. Ubom was signing the guaranty in a personal capacity. In the section of the Agreement identified as "Guarantor Information," Mr. Ubom added his personal information, including his date of birth, address, phone number, social security number, and driver's license number. Mr. Ubom also included information regarding his individual finances, including his gross annual salary, sources of other income, and net worth. That Mr. Ubom did not include his name on the grantor line does not negate the clear evidence that Mr. Ubom was listing himself, personally, as the guarantor.

The clear language of the Agreement as a whole shows that Mr. Ubom's signature as guarantor was in a personal capacity, resulting in personal liability when ULG defaulted on its obligations. The language of the Agreement was unambiguous, and therefore, parol evidence was inadmissible to contradict the clear terms of the Agreement. The circuit court,

therefore, properly granted SunTrust's motion for summary judgment against ULG and Mr. Ubom.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**